```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

```
SHARON FIVEASH,                )
                               )
     Plaintiff,                )
                               )  Civil Action No. 5:08-CV-28-JMH
v.                             )
                               )      MEMORANDUM OPINION
COMMERCE LEXINGTON, INC.,      )         AND ORDER
et al.,                        )
                               )
     Defendants.               )
```

                    **  **  **  **  **

Pending before the Court is Plaintiff's Motion for Summary Judgment [Record No. 14]. Defendants Commerce Lexington, Inc. ("Commerce"), Robert Quick ("Quick"), and Humana Health Plan, Inc. ("Humana"), have responded and Plaintiff has replied. Accordingly, this matter is ripe for review. Plaintiff commenced this action against Defendants under the Employee Retirement Income Security Act of 1974("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161-1168. For the reasons stated herein, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part.

**I.   BACKGROUND**

On November 28, 2007, Defendant Quick, President and CEO of Commerce, terminated Plaintiff Sharon Fiveash's ("Fiveash") employment as Executive Vice President. Prior to her termination, Fiveash was a participant in Commerce's employer-provided group

health and dental benefit plans.  Commerce held dental and health insurance policies with Delta Dental and Humana, respectively. Commerce purchased its Humana health insurance policy in May 2007. Under the policy, Commerce bore responsibility for collecting premiums and providing employees with information regarding their rights to continue coverage.

During Fiveash's exit interview, Quick told Fiveash only that she would be eligible for COBRA benefits.  On January 31, 2008, Commerce sent Fiveash notice of her dental continuation coverage rights under COBRA.  The notice listed December 31, 2007, as the date her benefits would end and March 31, 2008, as the last date she could elect to continue her dental coverage.  However, Commerce failed to provide an Election Form with this notice.  On February 26, 2008, Commerce sent Fiveash a new notice of her dental coverage continuation rights.  However, this notice erroneously stated her election period would expire on March 31, 2008, 30 days less than required under COBRA.  On March 4, 2008, Commerce sent a third notice to Fiveash, listing her termination on November 28, 2007, as the qualifying event, her benefits termination date as December 31, 2007, and the end of her dental continuation coverage election period as May 4, 2008.  Fiveash elected to continue her dental coverage on April 15, 2008.

On January 22, 2008, Ceridian COBRA Services Center ("Ceridian") advised Fiveash that Commerce retained Ceridian to

-2-

administer its COBRA continuation group health insurance program. On January 31, 2008, Ceridian sent a letter to Fiveash in order to "notify [her] of [her] group health care benefits continuation rights." The letter noted her termination as the qualifying event. It listed her benefits termination date as December 31, 2007, and her election period end date as March 31, 2008. On February 11, 2008, ("February 11th Letter") Ceridian sent Fiveash another letter, revising the dates relevant to her continuation of health insurance coverage. The revised letter listed her benefits termination date as November 28, 2007, and her election period end date as April 11, 2008. On April 14, 2008, Fiveash sent her election form to Ceridian in order to continue her health insurance coverage. On April 30, 2008, Ceridian denied coverage to Fiveash on the basis that her election was untimely.

In late November 2007, before her termination, Commerce withheld the regular monthly health insurance premiums from Fiveash's paycheck for the month of December. On November 29 and December 11, 2007, health care providers submitted claims for physician visits by Fiveash. Humana processed and paid these claims in accordance with the terms of the policy with Commerce. On March 3, 2008, Commerce reimbursed Fiveash for the December premiums. Defendants' counsel sent the check with a letter ("March 3rd Letter") explaining the reimbursement along with a copy of the February 11th Letter from Ceridian.

Humana reinstated health coverage for Fiveash on or around February 27, 2008. Humana records show that Fiveash's coverage was considered continuation coverage under COBRA. However, Fiveash was not notified that this coverage was available until September 2008. Commerce paid the premiums for this coverage.

Fiveash filed suit on January 18, 2008, seeking statutory penalties, attorneys' fees, and costs related to Defendants' alleged failure to provide proper and timely notice of her continuation rights. Fiveash also claims that Defendants breached their fiduciary duties under ERISA and retaliated against her in violation of ERISA when they failed to properly notify Fiveash of her continuation coverage rights under COBRA. In her motion, Fiveash states that she does not seek summary judgment against Humana, but claims Humana is a necessary party should the case proceed to trial. Humana nevertheless has responded.

**II. STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is

an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citations omitted). The Court must construe the evidence in the light most favorable to the nonmoving party, in this case, Defendants. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for" the non-moving party. *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

Fiveash has asked this Court to order Defendants to provide proper notice of her right to continue her health insurance coverage, as required under ERISA and COBRA. Additionally, Fiveash seeks statutory penalties, attorney's fees, and costs under ERISA.

COBRA obligates employers whose health plans are covered by ERISA to offer continuation coverage to employees for at least eighteen months after a "qualifying event." 29 U.S.C. § 1162(2)(A). Termination of a covered employee's employment is a qualifying event, if for reasons other than gross misconduct. *Id.* § 1163(2). Once an employee is terminated, the employer must notify the plan administrator of the qualifying event within 30

days of the date of the qualifying event. *Id.* § 1166(a)(2). The plan administrator then has 14 days to notify the employee, and any other affected qualified beneficiary, of her continuation rights under COBRA. *Id.* § 1166(a)(4), (c). If the employer is the plan administrator, then the employer has 44 days to notify the employee of her continuation rights. 29 C.F.R. § 2590.606-4(b)(2).

ERISA defines "plan administrator" as the person so designated by the terms of the plan, the plan sponsor, or such other person as the Secretary of the Department of Labor ("DOL") may prescribe by regulation. 29 U.S.C. § 1002(16)(A). "Plan sponsor" includes "the employer in the case of an employee benefit plan established or maintained by a single employer." *Id.* § 1002(16)(B). The plan sponsor has the duty to notify employees of their right to elect continuation coverage. *Id.* § 1161(a).

COBRA "does not prescribe the contents of the required notice." *See Id*. § 1166(a)(4); *McDowell v. Krawchison*, 125 F.3d 954, 958 (6th Cir. 1997) (notice must allow qualified beneficiary to make informed decision whether to elect coverage). In November 2004, the DOL promulgated regulations concerning the contents of any election notice sent to a qualified beneficiary. 29 C.F.R. § 2590.606-4(b), (h). Any notice sent after November 26, 2004, must contain the following, relevant to this inquiry: the name of the plan, contact information for the administrator of the plan, identification of the qualifying event, the date on which coverage

under the plan will terminate unless continuation coverage is elected, an explanation of the plan's procedures for electing continuation coverage, the time period in which any election must be made, the date by which election must be made, the commencement date for such coverage, the amount of any premiums for continuation coverage, and a statement that the notice does not fully describe continuation coverage and that such information is available from the plan administrator. *Id.* § 2590.606-4(b)(4)(i)-(xiv).

Employees must elect to continue coverage under the employer's group health plan before the election period ends. A participant has 60 days to elect continuation coverage, starting from the later of (1) the date of the qualifying event, or (2) the date the participant receives notice under § 1166(a)(4) of their right to continue coverage. *Id.* § 1165(a)(1). Supplementary information accompanying DOL's regulations note that "a required notice generally should be considered 'furnished' by a plan administrator as of the date of mailing, if mailed by first class mail, certified mail, or Express Mail; or as of the date of electronic transmission, if transmitted electronically." DOL Health Care Continuation Coverage, 69 Fed. Reg. 30,084, 30,091 (May 26, 2004); *see also* 29 C.F.R. § 2590.606-4(f) (required notices to be furnished pursuant to 29 C.F.R. § 2520.104b-1(c)); 29 C.F.R. § 2520.104b-1(c) (notice provided at time document sent electronically). An employee's election is effective on the date

-7-

it is sent to the plan administrator.  26 C.F.R. § 54.4980B-6. Employers may require employees to pay a premium for any period of continuation coverage up to 102 percent of the cost.  29 U.S.C. § 1162(3); *McDowell*, 125 F.3d at 958.

ERISA authorizes civil suits by plan participants in order to enforce rights under the terms of the plan, recover benefits due, and redress violations of the Act.  29 U.S.C. § 1132(a).  A plan administrator that fails to meet the notice requirements under COBRA "may in the court's discretion be personally liable to such participant or beneficiary in the amount of $100 a day from the date of such failure or refusal.  *Id.* § 1132(c)(1).  The court also has discretion to award reasonable attorney's fees and costs to either party.  *Id.* § 1132(g).  "Many courts have refused to impose any penalty at all . . . in the absence of a showing of prejudice or bad faith."  *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994) (affirming district court's assessment of $25,200 penalty on basis of high number of participants and despite Defendant's showing of good faith and lack of prejudice to plaintiffs).

**A.  Plaintiff's Right to Continuation Coverage**

In this case, Defendants provided adequate notice to Fiveash of her right to continue health insurance coverage.  Fiveash claims that the February 11th Letter was inadequate notice because it listed her benefits termination date as November 28, 2007, instead

-8-

of December 31, 2007.  Fiveash does not claim that the February 11th Letter was inadequate for any other reason.  Moreover, there is no evidence to suggest that the notice was otherwise inadequate under the DOL's regulations.  Instead, Fiveash argues that the March 3rd Letter was subsequent notice under COBRA that entitled her to a renewed 60 day election period.  The Court disagrees.  The March 3rd Letter was not "notice" as defined by the COBRA regulations.  It lacked much of the information required by regulation, including the plan name, where to send premiums, or the amount of premiums.  The March 3rd Letter served only to return the money withheld from Fiveash's paycheck for her December health insurance premium, pursuant to the health insurance policy with Humana.  In fact, the March 3rd Letter references the February 11th Letter as the latest notice sent to Fiveash.

The February 11th Letter was adequate notice despite the benefits termination date dispute.  Viewing the facts in the light most favorable to Defendants, the benefits termination date in the notice was correct.  The letter apprised Fiveash of her right to continue coverage, how to do so, and, importantly, gave her a deadline of April 11, 2008, for electing to continue coverage.  In any event, using the later termination date would not extend Fiveash's election period beyond April 11, 2008, and because both benefit termination dates had passed, notifying her of the dates was no longer an essential consideration in deciding whether to

-9-

continue coverage. Any dispute over the exact date or to recover premiums for December 2007 could have been resolved apart from her election to continue coverage and did not affect the sufficiency of Commerce's notice regarding Fiveash's COBRA rights.

Fiveash failed to properly elect to continue coverage. She elected to continue coverage on April 14, 2008, three days after the deadline set in the February 11th Letter. Fiveash argues that the Court should assume she received the notice at least three days after it was sent on February 11th, thus making her election timely. Fiveash has not informed the Court as to when she actually received the February 11th Letter. According to supplementary information contained in the Federal Register, Commerce's notice to Fiveash was effective on February 11, 2008, not when she received it. Fiveash does not claim that she failed to receive the notice or lacked ample time to elect continuation coverage. In fact, the defective notices she received effectively extended her election period 135 days past her termination and she admitted to having the health insurance notice for "several weeks" before mailing her election form. Fiveash received adequate notice under COBRA and failed to properly elect continuation coverage. Thus, summary judgment on this issue will be denied.

**B. Statutory Penalties, Attorneys' Fees, and Costs under ERISA**

Fiveash also claims she is entitled to statutory penalties and attorneys' fees for Defendants' failure to give her timely notice,

-10-

as required under COBRA. Under its policy with Humana, Commerce was designated as the policyholder, but the plan does not designate a plan administrator. In that event, COBRA defines the plan administrator as the plan sponsor. Thus, as plan sponsor, Commerce was responsible for notifying Fiveash of her continuation coverage rights 44 days after her termination, or by January 11, 2008. It is undisputed that Commerce's notice to Fiveash was untimely because it was not sent until after January 11, 2008. The Court has discretion to award statutory penalties and attorneys' fees for Commerce's untimely notice.

In deciding the amount of the penalty, the Court will look at two periods of time where the penalty may be appropriate. Whether the Defendants acted in good faith and without prejudice to Fiveash are key inquiries, but are not controlling considerations. The first period runs between January 11, 2008, the date notice was due, and January 31, 2008, the date of Commerce's first notice to Fiveash. The second period runs from the first notice to the second notice, on February 11, 2008. Commerce provided adequate notice on February 11, 2008, thus statutory penalties are not appropriate beyond this date.

During the first period, Commerce made no attempts to notify Fiveash of her continuation rights. Commerce was legally obligated to do so, and was reminded of this obligation when Fiveash filed suit on January 18. However, Commerce did not attempt to notify

-11-

Fiveash of her rights in any form, much less a form meeting the DOL's regulations. Moreover, Commerce's dilatory behavior delayed Fiveash, as a plan participant, from being fully informed of her rights to continuation coverage under COBRA. Statutory penalties are appropriate for this period.

The second period of time does not warrant a statutory penalty. Commerce's January 31 attempt to provide notice contained only one alleged error, the benefits termination date. The fact that this notice contained a benefits termination date Fiveash claims is correct cuts for finding that this attempted notice was made in good faith. Upon discovering the mistake, Commerce sent a revised notice and extended the election period. Fiveash was not prejudiced by the lack of notice during this time period because, save one mistake, the notices were identical. In fact, Fiveash could have elected to continue coverage based on this notice before the revised notice was issued on February 11. The Court declines to assess a penalty beyond January 31, 2008.

Commerce argues that no statutory penalty is appropriate in this case because it provided continuation coverage, retroactive to her termination, at no cost to Fiveash. However, the Court disagrees because Commerce provided no evidence that Fiveash was aware of her continuing benefits. In fact, Fiveash's unchallenged evidence is that Commerce continued her coverage in February 2008, after she filed suit, and did not inform her of that fact until

-12-

September 2008. An affidavit filed by Humana suggests Fiveash knew she was covered based upon the fact that her physician claims were paid. However, the only dates of service provided by any party were in late-November and December 2007, before Commerce decided to continue her coverage and when Fiveash was arguably covered by her pre-termination insurance. Moreover, Commerce has not explained the discrepancy between continuing her coverage on its own initiative in February 2008, and then denying her coverage on April 30, 2008, on the basis of her untimely election.

In view of the fact that Commerce was late in notifying Fiveash of her continuation rights and acted without good faith and with prejudice to her rights under COBRA, the Court finds statutory penalties appropriate in this case. The Court will award statutory penalties against Commerce in the amount of $100 per day from the deadline for providing such notice, January 11, 2008, to the date that Commerce made its first good faith attempt to comply with the statutory requirements, January 31, 2008. Thus, Fiveash will be awarded $2,000 in statutory penalties, in addition to any reasonable attorneys' fees and costs incurred in seeking this amount only. *See* 29 U.S.C. § 1132(c)(1), (g).

**IV. CONCLUSION**

Plaintiff received adequate notice of her continuation rights under COBRA and, thus, she is not entitled to judgment as a matter of law on her claims of lack of adequate COBRA notice, breach of

-13-

fiduciary duties under ERISA, and retaliation in violation of ERISA. As there is no genuine issue of material fact, Plaintiff is entitled to judgment as a matter of law on her claim that Commerce's notice to her was untimely.

Accordingly, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [Record No. 14] be, and the same hereby is, **GRANTED IN PART** and **DENIED IN PART**,

(2) that Plaintiff's claim for statutory penalties under 29 U.S.C. § 1132(c)(1) is **GRANTED**, in the amount of $2,000,

(3) that Plaintiff's motion as to all other claims pending in this action is **DENIED**, and

(4) that Plaintiff is awarded reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g) in pursuing the statutory penalties awarded, and

(5) that Plaintiff shall have up to and including February 24, 2009, to **SHOW CAUSE** as to why her remaining claims should not be dismissed in light of this Order.

This the 10th day of February, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge